## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| **ELI TERRELL**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CA No.: |
| v. | § | |
| | § | |
| **PORTFOLIO RECOVERY** | § | Jury Demanded |
| **ASSOCIATES LLC**, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

1. Plaintiff Eli Terrell ("**Plaintiff**" or "**Terrell**") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Id.* at 744.  In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them.  Thus, and as applicable here, Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"

3. The TCPA prohibits calls to a cell phone made with an auto dialer or with a prerecorded voice unless prior express consent is given. Plaintiff never so consented.

4. Portfolio Recovery Associates LLC ("**Defendant**") called Plaintiff's cell phone on hundreds of occasions using an auto dialer and a pre-recorded voice. Because Plaintiff had not given his consent to receive calls from Defendant, these calls violated the TCPA.

5. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiff now seeks this Court's intervention and help in attempting to prohibit this unlawful conduct.

## Parties

6. Plaintiff is a resident of the State of Oklahoma.

7. Plaintiff is the "called party" with respect to the calls placed to his cellular telephone number \*\*\*-\*\*\*-8413.

8. Defendant is a debt collector who buys junk debt and attempts to collect on it. Defendant regularly conducts business in Texas and Oklahoma, is registered to do business in Texas and Oklahoma and operates a call center in this District.

## Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper because some of the acts subject to this action were taken by Defendant in this District. Upon information and belief some of the calls at issue in this lawsuit were made from Defendant's call center located in this District.

## Article III Standing

11. Plaintiff has Article III standing for his claim under the TCPA. *Spokeo, Inc. v. Robins*, --- S.Ct. ---, 2016 WL 2842447, at *5 (U.S. May 16, 2016). With regard to each of the phone calls Plaintiff was harmed by Defendant's actions of calling his cell phone without consent and with an ATDS and/or a pre-recorded voice in the following manners:

   a. Plaintiff's privacy was invaded by Defendant;

   b. Plaintiff was harassed and abused by Defendant's telephone calls;

   c. Defendant's calls were a nuisance to Plaintiff;

   d. Defendant's calls upset Plaintiff emotionally;

   e. Plaintiff's cell phone was unavailable for other use while processing the illegal calls from Defendant;

   f. Defendant illegally seized Plaintiff's cellular telephone line while they made illegal calls to Plaintiff's cellular telephone;

   g. Plaintiff's cellular telephone line was occupied by multiple unauthorized calls from Defendant;

   h. Defendant's seizure of Plaintiff's cellular telephone line was intrusive; and

   i. Plaintiff was inconvenienced by, among other things, hearing his cell phone ring, having to check the calling party and having to delete messages left by Defendant.

### The Telephone Consumer Protection Act

12.     Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of auto-dialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted, prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); S*ee also Mims*, 132 S. Ct. at 745.

15.     The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers." Specifically, the plain language of section 227(b)(1)(A)(iii)

prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

16. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

18. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *See FCC Declaratory Ruling,* 23 F.C.C.R. at 564-65.

19. In the same Declaratory Ruling, the FCC emphasized that both the creditors and third party debt collector may be held liable under the TCPA for debt collection calls. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless

number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call... A third party collector may also be liable for a violation of the Commission's rules.")

20. On July 10, 2015 the FCC confirmed it previous rulings that an autodialer included equipment that generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. The FCC also reiterated that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. FCC 15-72.

## Factual Allegations

21. Defendants' business is the collection of accounts receivables from consumers. Defendants use a predictive dialer to make telephone calls to cellular telephone numbers, often without the prior express consent of the persons using those cellular telephone numbers. This practice violates the TCPA.

22. Upon information and belief Defendant purchased debt and attempted to collect the balance alleged owed by Plaintiff. Plaintiff's believes that Defendant purchased a 2004 debt allegedly owed to US Cellular.

23. On information and belief in Defendant began collection efforts on the alleged debt and began a process of harassing phone calls to Plaintiff.

24. Defendant called Plaintiff on a repeated basis. Calls were made to Plaintiff's cell number. On information and belief, the purpose for these calls was debt collection.

   a. Calls were made by Defendant to Plaintiff at cell phone number 918-448-8413 (the "**Cell Phone Number**"):

25. Plaintiff is the subscriber on the account for the Cell Phones Number and is charged for calls made to the Cell Phone Number via a monthly charge. At all material times Plaintiff was/is the subscriber to the cell phone service associated with the Cell Phone Number and the cellular service provider for the Cell Phone Number.

26. On many days Defendant called the Cell Phones Number on more than one occasion. On many occasions Defendant called Plaintiff on back to back days. On information and belief, the records of Defendant should show when Plaintiff was called by Defendant.

27. Defendant placed automated calls to Plaintiff's cell phone using an automatic telephone dialing system ("**ATDS**") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)." On information and belief Defendant placed calls using Avaya Proactive Contact Dialers and/or another predictive dialer ("**Predictive Dialers**"). The Predictive Dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff's cellular telephone numbers at issue when Defendant made the calls alleged below. Rather, the Predictive Dialer electronically dialed Plaintiff's cellular telephones in an automated fashion. The Predictive Dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

28. When the calls connected, there was an audible click from the receiver. After a significant pause, a message was left by Defendant either by a live person or a prerecorded

voice. As such, the calls at issue were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiff's number without human intervention.

29. The facts in the preceding paragraph indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

30. On many of the calls Defendant left a message consisting of a prerecorded voice. Plaintiff listened to the message and recognized that it was not a live person leaving the message but an automated voice recording.

31. The facts in the preceding paragraph indicate the call was placed using an "artificial or prerecorded voice."

32. Plaintiff has not provided Defendant with the Cell Phone Number or permission to call his Cell Phone Number.

33. None of the calls at issue were placed by Defendant to Plaintiff's Cell Phone Number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

34. On information and belief Defendant obtained Plaintiff's cellular number from a credit report which Defendant accessed or through a method known as "skip-tracing," whereby collectors and creditors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

35. On some occasions after answering the phone Plaintiff spoke with a representative of Defendant and told them that the alleged debt had been paid to Defendant and instructed them to quit calling him. Defendant, however, continued to call

36. The calls at issue in this lawsuit occurred within the four years of the date this lawsuit was filed.

37. As a result of aforementioned tenacious collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy, stress, anxiety, nervousness, hypertension, instability, worry, embarrassment, intimidation, indignation, and, emotional and mental distress. Additionally, Plaintiff suffered from loss of happiness, sleep, privacy, reputation, and, income. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

38. Plaintiff was notified by the MDL class action administrator that he was identified as an individual whose Defendant's records indicate was called on his cell phone.

## Legal Claims

### 1. Violations of the TCPA's provisions prohibiting auto-dialed and prerecorded message calls to cell phones

39. Plaintiff incorporates the allegations from all of the previous paragraphs as if fully set forth herein.

40. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of the federal law, including 47 U.S.C. §227(b)(1)(A)(iii). Thus, Defendant violated the TCPA by initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service.

41. Plaintiff is informed, believes and alleges that Defendant's violations of the TCPA described above were done willfully and knowingly.

42. The willful and knowing nature of Defendant's conduct is exhibited in part by the following facts:

    a. Defendant is a large entity with access to legal advice through its own regulatory department and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

    b. Defendant knew or had reason to know that its conduct was inconsistent with published FCC guidance interpreting the TCPA and the plain language of the statute;

    c. Defendant knew that Plaintiff had not consented to calls to his cell phone as Defendant only received Plaintiff's cell phone from the credit report which it illegally accessed;

    d. Plaintiff told Defendant to quit calling his cell phone;

    e. Upon information and belief Defendant knew that permission was required before Defendant could call Plaintiff's cell phone using an auto-dialer or a prerecorded voice; and

    f. Upon information and belief Defendant was aware of the requirements of the TCPA, but choose to not to comply with those requirements.

43. Plaintiff is entitled to damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3) because the violations were willful and knowing violations of the TCPA.

### Relief Sought

44. Plaintiff requests the following relief:

   a. That Defendant be found liable under the TCPA and Plaintiff be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each willful/knowing violation of the TCPA; and

   b. Plaintiff be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

**Respectfully submitted,**    By:  _/s/ Chris R. Miltenberger_
Chris R. Miltenberger
Texas Bar Number:
14171200

**The Law Office of Chris R. Miltenberger, PLLC**

1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**Attorney for Plaintiff**